23-6723 (L)
*United States of America v. Ramos*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of December, two thousand twenty-four.

PRESENT:
> REENA RAGGI,
> RICHARD C. WESLEY,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                          23-6723 (L),
>                                                              23-6726 (CON)

JOSE RAMOS,

> *Defendant-Appellant.*

_____

FOR DEFENDANT-APPELLANT:        ANNA ESTEVAO (Michael Tremonte, *on the brief*), Sher Tremonte LLP, New York, NY.

FOR APPELLEE: DOMINIC A. GENTILE (Nathan Rehn, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

Appeal from judgments of the United States District Court for the Southern District of New York (Lewis A. Kaplan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments entered on June 15, 2023, and amended on June 28, 2023, be **VACATED** and the cases be **REMANDED** for further proceedings.

Defendant-Appellant Jose Ramos ("Ramos") appeals from the district court's amended judgments revoking his supervised release and sentencing Ramos to sixty months' imprisonment following his admission to two violations of supervision. Ramos argues, *inter alia*, that the district court's sentence was procedurally unreasonable. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision to vacate and remand.

## BACKGROUND

On October 3, 2002, Ramos was charged in a two-count superseding indictment (the "2002 Indictment") with drug trafficking and firearm offenses. After Ramos pleaded

guilty to both crimes on November 5, 2002, law enforcement authorities uncovered evidence of his participation in multiple robberies and additional drug trafficking.

On December 8, 2003, Ramos pleaded guilty to a nine-count information (the "2003 Information"), charging various drug trafficking, robbery, and firearm offenses. All of those offenses occurred in or prior to January 2002, except for Count Six, which charged Ramos with drug possession and distribution from 1995 through May 2003.[1]

Ramos was sentenced on January 14, 2005, for all crimes charged in the 2002 Indictment and the 2003 Information to a total of 144 months' imprisonment. As for supervised release, he received a ten-year term on Count One of the 2002 Indictment, three-year terms on Count Two of the 2002 Indictment and Counts One through Four of the 2003 Information, and five-year terms on Counts Five through Nine of the 2003 Information.[2]

After being released from prison on June 14, 2013, Ramos was re-arrested on January 30, 2017, for multiple attempts to buy and sell cocaine in violation of New York

_____

[1] Ramos argues that the May *2003* date in Count Six reflects a typographical error that was then repeated in his plea agreement and allocution. He maintains that it should have read May *2002* because that is when he was taken into custody and therefore was unable to commit the charged substantive crime the following year. At oral argument, the government conceded that no evidence or records show Ramos to have committed any specific acts of drug possession or distribution in May 2003. It is unnecessary for us to determine the temporal scope of Count Six of the 2003 Information to conclude that the amended judgments challenged on this appeal must be vacated for the reasons stated in text.

[2] Insofar as the district court ordered the concurrent five-year terms of supervision for Counts Five through Nine of the 2003 Information to run consecutively to the ten-year term of

Penal Law § 220.77. After serving a state prison sentence, Ramos pleaded guilty on September 6, 2018, to violating his federal supervised release. The district court sentenced him to thirty-six months' imprisonment followed by five years' supervised release. The Amended Judgment for Revocation of Supervised Release was filed only on the docket for the 2002 Indictment case, not the 2003 Information case.

After being released again from federal custody on April 13, 2021, Ramos was soon involved in various violent incidents. Specifically, in November 2021, he was arrested on New York State robbery charges. On December 3, 2021, Ramos's car was shot at, and on July 14, 2022, he was shot in the foot during a neighborhood dispute. The robbery charges were dismissed, and Ramos was not charged with any crimes in connection with the shooting incidents.

Ramos was, however, arrested and charged as a result of a July 26, 2022 domestic dispute with his girlfriend that involved the use of force. Approximately one month later,

---

supervision on Count One of the 2002 Indictment, the government concedes that this was plain error, as "multiple terms of supervised release . . . must run concurrently." *United States v. Sash*, 396 F.3d 515, 525 (2d Cir. 2005). The government also concedes that if the terms had run concurrently rather than consecutively, Ramos's terms of supervised release for all counts other than Count One of the 2002 Indictment would have concluded before Probation filed the instant supervised release violation report. We do not here decide which terms of supervision were running at the time of Ramos's latest violation or what impact, if any, the government's concessions have on Ramos's argument regarding the applicable statutory maximum term of imprisonment that he could have received in the second revocation proceeding. We note only that this court may not correct Ramos's 2005 sentence on this appeal because he did not identify— let alone challenge—the error until now, and the "validity of an underlying conviction or sentence may not be collaterally attacked in a supervised release revocation proceeding." *United States v. Warren*, 335 F.3d 76, 78 (2d Cir. 2003).

4

on August 27, 2022, Ramos was seriously injured—and his girlfriend was killed—when an unidentified gunman fired into the car in which the couple were seated. When Ramos was hospitalized after the shooting, medical staff found ten envelopes of cocaine on his person, prompting further state criminal charges. Meanwhile, in an interview after the shooting, Ramos provided police with a home address different from that reported to his probation officer.

As a result, on August 30, 2022, Probation filed a violation report charging Ramos with five violations of supervised release: three charging that Ramos, in the July 2022 domestic dispute, committed assault, petit larceny, and harassment; one for possession of a controlled substance; and one for failure timely to notify Probation of a change of residence. On June 14, 2023, Ramos pleaded guilty to the petit larceny and change-of-address violations, for which the relevant policy statement in the United States Sentencing Guidelines provided a range of eight to fourteen months' imprisonment. *See* U.S.S.G. § 7B1.4(a). The statutory maximum term of imprisonment for such violations—without accounting for any prison sentence served in connection with Ramos's first supervision violation—was five years because Ramos's underlying Count One offense for possession and distribution of 66.8 grams of crack cocaine constituted a Class A felony. *See* 18 U.S.C. § 3583(e)(3). The district court revoked Ramos's supervised release in both the 2002 Indictment case and the 2003 Information case and imposed a sentence of sixty months' imprisonment; the challenged amended judgments were filed on the dockets in

5

both the 2002 Indictment case and the 2003 Information case. Neither party objected to this sentence in the district court.

## DISCUSSION

Ramos contends that his sixty-month sentence was procedurally unreasonable because the district court did not adequately explain its reasons for imposing an above-Guidelines sentence, leaving ambiguous whether it relied on unproved conduct without making any factual findings.

"Sentences for violations of supervised release are reviewed under the same standard as for sentencing generally: whether the sentence imposed is reasonable." *United States v. Smith*, 949 F.3d 60, 65–66 (2d Cir. 2020) (internal quotation marks omitted). A sentence is procedurally unreasonable if, among other reasons, the district court "fails adequately to explain the chosen sentence." *United States v. Aldeen*, 792 F.3d 247, 251 (2d Cir. 2015) (internal quotation marks omitted), *superseded by statute on other grounds as recognized in Smith*, 949 F.3d at 64. Although, "a district court must sufficiently explain its reasoning so that the parties, the public, and a reviewing court can understand the justification for the sentence," *Aldeen*, 792 F.3d at 255, "the degree of specificity required for the reasons behind a [violation of supervised release] sentence is less than that for plenary sentencing," *Smith*, 949 F.3d at 66 (internal citation omitted). A district court's explanation of a within-Guidelines sentence imposed on a violation of supervision "can be minimal." *United States v. Cassesse*, 685 F.3d 186, 192 (2d Cir. 2012). Where a sentence

6

is outside of the advisory Guidelines range, however, "the court must [] state the specific reason for the sentence imposed . . . [and a] major departure should be supported by a more significant justification than a minor one." *Aldeen*, 792 F.3d at 251–52 (internal quotation marks omitted).

In imposing a significantly above-Guidelines, five-year sentence in this case, the district court explained to Ramos that it was "persuaded very substantially to agree with [the prosecutor's] assessment that the community is safe from you only when you are off the street." App'x 75. The record indicates that the prosecution, in making that point, alluded to many of the incidents summarized *supra*, some of which resulted in criminal charges being filed against Ramos, some of which resulted in charges being filed but dismissed, and some of which resulted in no charges. For example, the prosecution posited that the August 2022 shooting in which Ramos was injured and his girlfriend was killed "was not a random act of violence," but that Ramos was "targeted because he was engaged in some sort of narcotics activity." App'x 72. The defense strenuously objected to that characterization, noting that there was no evidence—nor any indication from police reports or other investigative materials—that Ramos was involved in narcotics distribution at the time of the shooting. The district court did not, however, explain how it resolved this dispute so as to permit it to adopt the prosecution's position. While the district court, like any factfinder, is entitled to rely on circumstantial evidence and reasonable inferences drawn therefrom, in the absence of any factfinding or explanation

7

here, "we are unable to conclude" that the district court did not rely on unproved conduct or that "there were sufficiently compelling reasons to support the deviation" from the Guidelines range. *See Aldeen*, 792 F.3d at 254 (internal quotation marks omitted). We are, therefore, obliged to vacate the challenged sentence for procedural error, and to remand for resentencing to allow the district court to clarify the rationale behind its sentence and make specific factual findings as needed.

*    *    *

For the reasons set forth above, we **VACATE** the judgments and **REMAND** the cases to the district court for resentencing.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court